Thank you. Good morning, Your Honors. I have the pleas of court, Josh Slager, on behalf of the appellants and intervenors in this case. I think that the key matter, the key issue that needs to be addressed by the court is there's a federal statute that allows attorneys' fees shifting provision. Is that allowed against the attorneys specifically when that statute's silent or otherwise there isn't any type of engineering, the Ninth Circuit case, which speaks directly to this point. Aside from that, I think it's important to point out some of the relevant facts that give rise to the order by the court. I was the trial attorney that tried this case, and I felt it had merit. I argued this case for four, five, six days, and at the conclusion of the trial, the judge took it under submission, and at the end of 18 months, came back with a ruling that I ultimately lost. But if you take a look at the findings of fact that are lengthy, there isn't any allegations or any type of conduct that the court addresses specifically towards myself or any other member of my firm in trying the case that would support some type of reward of the full amount of attorneys' fees that the defendants incurred against myself. And if I understand from my recollection of the briefing and whatnot, your firm came into the case late in the game. Yes, Your Honor, that is correct. Is that right? We substituted in just right before trial. In fact, the pretrial memorandum, the contention of law, in fact, had already been drafted, but we did sign off and finished preparing the pretrial order. That's the time that we substituted in. And you took the case to trial, and then there was a motion for a judgment under Rule 50A. Is that correct? That's correct. At the conclusion of our case in chief, the defendants made multiple motions for a directive verdict. All of those were subsequently overruled, and the case allowed to proceed to the conclusion. So at that point, the judge felt that there was enough, and the jury was still present at that time, correct? Or had the jury already been let go? At that point, the jury had been let go, and it had been converted into a bench trial, Your Honor. So it was just a motion for a judgment at that time in front of the court. Yes, Your Honor. But in any event, the judge assessed the evidence and felt it was sufficient to go forward. Yes, Your Honor. I think you bring up a good point. I mean, that goes right to what the Fifth Circuit said in National Association of Government Employees, where it said in passing that how can a case be so frivolous as to warrant sanctions when it was meritorious enough to go to trial? And not only was this case good enough to go to trial, I mean, the judge deliberated over the evidence and the findings of facts for 18 months. And it wasn't until after the findings of facts had been submitted that the appellees or the defendants in this case decided that now they would want to seek an award of attorneys, not only against my client, but against Plaintiff's counsel personally. To move on, Your Honor, I've been thinking about this case for two years. I'm not that far out of law school, but, you know, I remember my contracts professor saying on the first day of contracts, look over to the side of the wall where you see all the state and federal reporters. Look at all the cases. Look at all the case books. You know, in those cases, half the people lose. And in this case, unfortunately, I lost. But there's no specific finding that I conducted myself in any improper way. I didn't support a perjury. I didn't argue a frivolous motion. Let me split up, if I can, the question of finding of bad faith as against the client as distinct from as against you. Yes, Your Honor. Let's focus on the finding of bad faith under K-A-3 as against your client. Yes, Your Honor. I don't want to talk about you for a moment. Why was the judge wrong as to that? That is to say, the judge says, you know, the mother who comes in, that testimony is just flabbergastingly inadequate. Those are deliberate and preposterous lies. I mean, he couldn't say enough bad things about the testimony of the mother, for example. Yes, Your Honor. And I think there were multiple claims at trial. The one where the client's testimony and that as well of his mother was contingent on prevailing, the judge found my client and the witness not credible. But to support a finding of bad faith, I think that would be inappropriate, because before we went to trial, there was absolutely no discovery conducted on the case. There was nothing. There was no depositions, no written discovery, nothing. We just went to trial. But your client knew his own mother. I mean, typically you don't depose your own witnesses anyway, and I doubt very much you depose your own mother. But my guess is that they had a conversation. What are you going to say, Mom? Absolutely, Your Honor. But putting aside for a moment the issue about the credibility about the witnesses, the fact that we had credit reports, my client had credit reports, that showed that it didn't appear that the defendant was accurately reporting to the credit reporting agency. Did he have any credit reports that were inaccurate as to him? Yes, Your Honor. His credit reports did not show the disputes in which he had submitted to the credit reporting agencies, which the defendants were obligated to report back. Now, at trial, they ---- Now, I read the record differently, but I might have read it too quickly. I thought that what you had was credit reports that showed that for other people, that when they sent in, they made mistakes. Did you actually have for his credit reports that they had sent in, but it was ---- excuse me, for his credit reports, it was not reported as disputed? Yes, Your Honor, that is correct. Those credit reports showed the fact that other credit reporting ---- the other original creditors had reported it as disputed, but in his specific case that the defendant had not disputed with the credit reporting agencies. To find out at trial, they presented, the defendants presented testimony and evidence that they, in fact, had communicated with the credit reporting agencies. But from the view of the evidence as we took it to trial, it appeared that it was a good claim. Ultimately, at trial, their evidence won out over ours. But to make it non-meritorious or frivolous, I think, is taking it a step too far. Now, let me just ---- not all of the claims depended upon the mother's testimony. Is that correct? That's absolutely correct, Your Honor. The claim involving the letter, the threat of litigation, right? Absolutely. The threat of legal action. Absolutely. That didn't depend on the mother. Absolutely not. That claim stood on its own, in fact, independent of any type of witness. That letter was sent from the defendants and could have been authenticated through the defendant's witness. I think, Your Honor ---- But the claim is, I mean, there's no dispute about that claim in a sense. I mean, the letter says what it says, and the issue is whether the letter is a threat. Absolutely, Your Honor. Absolutely. In our position, that it was a threat. The judge might have saw it differently, but, you know, the issue was ---- How a least sophisticated consumer might perceive the letter. That's correct. Is the correct case. That's correct. And the standard, you know, is enunciated by the Ninth Circuit and Baker v. G.C. Services. And our interpretation of the case law in that letter was that it was a threat to litigate a claim that they never intended to do. The judge saw it differently, but it wasn't a bad faith claim to serve. It had merit to it. And I recognize that the judge saw it differently and I accept that. But I think there's ---- If this order were to stand, Your Honors, it has a strong public policy against ---- Let me ask you this. Why can't we, you know, if you read the statute, 1692K, A3, it doesn't say lawyers or counsel or attorneys. It's going to be awarded against the counsel for the plaintiff. It doesn't seem to be awarded against counsel. No, it doesn't. It doesn't have those words, does it? It just says the court can award fees. Absolutely, Your Honor. And if you take a look at the case we cite, I think it's a seminal case, Finkston v. Ronan Engineering, with the False Claims Act, that's almost the identical language. The only ---- the additional language in the FDCPA is that it's not just for bad faith, but also for the purpose of harassment. And in the Finkston case, they found that absent some type of legislative intent, some type of, you know, congressional record, that it was supposed to be awarded against the attorney's fee, against specifically the attorneys, then it can only be awarded against the client themselves if there's a finding of bad faith. And I think that's exactly what we have in this case. And I find nothing in the appellee's answer that would show a different interpretation by the Ninth Circuit. To go back, just to save a little more of my time, just as far as the policy argument is, if this order were to stand, not only will plaintiff's attorneys have to worry about taking a case to trial and ultimately losing and perhaps not recovering anything for their client, but now they have to weigh in the fact that if the judge subjectively doesn't like their case or like their client, that they might personally be on the hook for all the defendant's attorney's fees. And this goes against, you know, the American... So is the case with Rule 11 a malicious prosecution and whatnot? Possibly with Rule 11, but there's a procedure set out in Barber which would identify certain things if the court were displeased with the way the lawyer was bringing the case. And in this case, the motion was asserted by the defendant. It wasn't initiated by the judge. Okay. Why don't we hear from the other side? You've got about 45 seconds, and we'll give you enough time to respond. Thank you, Your Honor. Your Honors, may it please the Court, I'm Tomio Narita from Simmons and Narita, and I represent the appellees Midland Credit Management and MRC Receivables. Your Honors, when Congress passed the FDCPA and they put this fee-shifting provision into place, they told us what their intent was. The intent is right in the legislative history. The intent is in order to protect debt collectors from nuisance lawsuits, a court may award fees under these circumstances. So the intent is clear. The question is how can a district court best effectuate that intent? Well, that's not quite – well, put it aside for a moment, the whole bad faith question, even against the plaintiffs. Just go to the statute. Where do you find the authority in the statute to award fees against the lawyers? The statute is silent, Your Honor. The statute is silent. What's your best case? It supports us reading this to encompass attorneys. Well, I think the best case is you read two together, Your Honor. Which two? You read Fingston with Motown. Which one? You read Fingston, which is this Court's decision, with Motown from the Second Circuit. And Fingston says in the absence of any evidence about what Congress's intent is, then we assume that the attorney cannot be responsible with the statute of silence. So why don't we – I mean, that's our law. I mean, that's Ninth Circuit law. Because if you look at – the Second Circuit had this type of situation with the Lanham Act. And in Motown, that statute was also silent. There was nothing in the plain language of the statute to tell a court whether it could be awarded against an attorney or not. So the Second Circuit went to the legislative history of the Lanham Act, and they found something there which guided them, which is that when Congress passed it, they said this is to deter harassing lawsuits. So given that, the Second Circuit concluded, look, how are we going to do that? How are we going to effectuate Congress's intent? The district court has to have the ability to award the fees both against the debtor and the debt collector. Well, you can always get fees against a lawyer, sanctions against a lawyer for Rule 11 violations. Correct. And Rule 11 has its own procedure. But under this – Under Section 1927. I mean, there are various provisions that you can get out of lawyers who behave badly. That is correct. But it's just prosecution, too. A separate suit would do that, Your Honor. Absolutely correct. However, we're talking about whether this particular statute allows for it or not. And you asked for my best case. As I said, it's this Court's case in Fingston which says, you know, what do we do if there's no congressional intent? You read that with Motown where it says, here, we found it, and you have to read the two together. And that's why I started with the legislative history of the FDCPA, which is to protect debt collectors from nuisance fees. You're not going to do that. But they're already protected to some degree with attorney's fees against the client. So that doesn't – unless you've got something very specific in the legislative history that says, and in order to effectuate that intent, we want attorney's fees not only against the client, but also against the attorney whenever we find that there's been a frivolous lawsuit, I can't get where you want me to get based upon just a general statement that we're trying to protect the debt collector against a frivolous lawsuit. And that's even assuming that I'm going to go against the Fingston that says if it's not in the wording of the statute, it's just not there. Right. Well, I think what Fingston says, Your Honor, with due respect is unless Congress has evinced some other intent when it's silent, you don't go against the attorney. And here, again – The ordinary place we look for congressional indication of intent is the statute. The Second Circuit – this is the question that this panel has to struggle with. And my point – I have to say, I'm not going to struggle very hard. Don't speak for my colleagues on this. Maybe we can just focus on the bad faith that Judge Fletcher was pointing to earlier. Sure. You know, really what – and address my earlier question, too. The case got beyond judgment under Rule 50 or whatever it is. By that time, I gather, it was a court trial. Correct. The judge said there's enough here to go forward. Exactly. Why doesn't that – I mean, why is that – that shows to me that it may have been a minimally – what was it? What's the term? Minimally persuasive, which is a term used in the case. Well, I don't think that beating a Rule 52 motion insulates you from having a bad faith action. And we've cited decisions from this circuit and from other circuits that say that. Because sometimes it takes until the end of the case to really assess the entire record as a whole and know that, hey, you know that testimony that they put on in their case in chief? It wasn't worth anything. It wasn't true. And if you read the findings of – How does all the mother's testimony be – it was fairly obvious by the time she sat down that it wasn't much. This is true. And yet the district court chose to give the plaintiff the opportunity to go through the rest of the trial. That was probably the district court – Well, after the plaintiff had presented their case and called their witnesses, the court could have said, this case is over. This is nothing but a – they're lying through their teeth. It's made up. It's ridiculous. Judgment for the defendant. Right then and there. Absolutely. Could have done that. Instead, the judge said, no, I want to hear from the defendant. You call your witnesses and you explain what happened here. That's correct, Your Honor. And when all was said and done, you look – There was enough there for the judge to put the burden on you to come back with evidence. I absolutely agree with you, Your Honor. And then the rest of the case happened. And then the district court, in looking at everything he saw, entered the findings of fact and said, this is a case that's factually groundless. There is nothing to this. Just taking the mother's – putting aside the negative credibility findings with respect to the mother and the affirmative testimony and whatnot, they did have a claim regarding the deceptive letter, alleged deceptive letter, which didn't require her testimony. All it required was one to take a look at this letter. That's correct. And there was no – it was admissible and look at it. And, you know, we're dealing with – you judge this letter from the perspective of the least sophisticated consumer. And you read this letter and, you know, there is some minimally – it is minimally persuasive that this is deceptive. But the claim, Your Honor, on that letter was that my clients didn't have an intent to proceed with litigation, which after – Right. And so the judge required you to go forward to present your evidence on that. But at first glance, when you look at this letter and you read it, you know, the least sophisticated consumer is going to think you're going to sue me. Well, that was the plaintiff's position. The court let that claim go. Once the court heard all the evidence again, they found out what the plaintiff had no basis for alleging, which is my client did intend to sue Mr. Del Niro. He had gone through the right cues. He was sue qualified. And they found that out. But he didn't care. He made that claim anyway. Let me ask you the following. I heard a moment ago when Mr. Schweigert was standing up that the credit reports for Mr. Del Niro showed the debts as not disputed. Is that correct? The credit report specific to him showed the debts as not disputed? Your Honor, I don't believe that's in the record. I have searched this record very carefully. Well, wait a minute. I don't believe there's anything in the record on that. I mean, weren't they presented at trial? I don't believe they were, Your Honor. I don't think that's correct. I don't believe that his – I mean, his credit reports never show up at trial? I do not believe they did. That is my best representation of you. It's a large record, but I do not believe it. And did you try the case? I did not try the case. Mr. Turner, who's with me, tried the case. Maybe he can tell me. Mr. Turner? Stephen Turner, Your Honor. Would you come up to the – just so he gets into the mic. I wasn't anticipating participating in the argument today. I don't have a clear recollection of what was produced, what was introduced into evidence or not. Exhibits. Exhibits. And I'm not going to in any way appear to be trying to mislead the Court. You can't remember? I genuinely don't. That's a fair answer. I mean, we can go back and look. Okay. Thank you. I'm sorry. Yeah, that's fine. So that's – my recollection is they did not make it in, but the record is before you. The record is going to be what it is. I was surprised to hear that statement. Yeah, okay. The – further to Judge Payne's point, which is does getting by a motion in essence insulate you from a later finding of bad faith? This Court has found to the contrary in the credit manager's Kennesaw case, which we cited to you, where the plaintiff actually beat summary judgment and a Rule 52 motion at trial, and then later, after all the evidence was in, this Court affirmed a ruling that the case was brought in bad faith and a fee award. There are several other cases from out of the circuit. I think in the FDCPA context, perhaps the best example is the Chowdhury case from the fourth circuit. Let me ask you this. You know, the lawyers didn't initially file this case, but I guess your claim is that they continued it in bad faith. I think – This group of lawyers. Correct. They didn't draft the complaint and file it and all that stuff. You're correct. But they brought it. They brought it. They substituted in, and they continued with the case. So your claim is really that they continued the case in bad faith when they knew that it was frivolous. And I think, yes, and I believe that – So nonetheless, they should be saddled with all the attorney's fees from the beginning to the end. That's what the district court found. It's supported by substantial evidence in the record. He was within his discretion to do that. I think within the meaning of the statute, they brought this case. They brought it to trial. I don't think the word brought means that you have to be – Well, in malicious prosecution, you pick up where the lawyer steps in. Under state law. I think that the – A lawyer can be held liable for not only filing a case with ill motives and whatnot, but also for continuing it when they learn that the case has no merit. I believe that's correct, and that's analogous to what we have here. And within the meaning of the statute, they have brought this action. Now, the evidence that you say convinced the judge that the letter was not threatening something they didn't intend to do, that's not what the judge ruled. What the judge ruled was, as I read this, this isn't a threat. The judge, in his order, didn't say, I find, as a matter of fact, they, in fact, intended to sue. Am I remembering that order incorrectly? I think that both concepts are in the order, but I think Your Honor is correct, that he disbelieved the interpretation of what the – the plaintiff's interpretation of the letter. At what point in the trial do you come in with the evidence that says, well, we actually didn't intend to sue? After – well, I mean, the evidence was admitted after the Rule 52 motions were denied. That's correct. And as they went to trial – as they took this case to trial, did they know that that – that you had that evidence? Well, I believe it showed up in the pretrial filings and the people we were going to call to demonstrate that. And if they have no reasonable basis for knowing what we've done or haven't done and whether they're suit-qualified, and they've taken no discovery, then they can make a decision. Well, who's suit-qualified? I'm not sure suit-qualified means the same thing as we're actually going to bring a lawsuit. I mean, what was the amount of the debt here? I don't recall that, Your Honor. It was significant, and it was certainly – it was more than $6,000, and it was – Ms. Melconian testified it was more than enough to qualify to be sued. And I'm using suit-qualified in a – in a shorthand sense, but the testimony of Ms. Melconian was that – that Minlin did intend to sue this – this debtor. And that, I do believe, was part of the judge's ruling, and also just a rejecting of the interpretation of the letter. Again, I don't think the fact that he allowed it. I have to say that I find that letter – if I'm reading that letter, I mean, there are threats, and there are threats. I mean, I could say, I am going to take you out behind the shed here, and I'm going to just beat the daylights out of you. That sounds like a threat. Sure. I could also look at you, look at my fist, and look back at you. That's a threat. Depending on the circumstance between the two of us, I could simply look at you. That might be a threat. That letter reads to me like a threat. Now, it may be that it doesn't say, I am going to sue you, but it looks to me like a threat that, hey, I'm thinking very seriously about this. I mean, the judge disagreed, and the judge may be right, but I don't think it's a frivolous argument that that letter was a threat. Well, the judge found otherwise in the sense that he found that this case had absolutely no factual basis to it, and that is in his findings. And under Chowdhury, that is – Factual? I mean, the letter's right in front of us. No, I mean, but facts combined with the law, Your Honor. It's a factually groundless case. In other words, the facts presented do not amount to a cause of action. And Chowdhury teaches us that that is – that's the very kind of nuisance lawsuit that Congress was trying to deter. Okay. Thank you. Response? You've saved a little time. Thank you. Just a response briefly, Your Honor. As far as Chowdhury is concerned, if you read the holding on that case, it was K-3 sanctions – K-3 fee shifting towards the plaintiff in that case, not the lawyer. It was actually Rule 11 that was imposed on the lawyers in that case. And what we have here is not an issue of sanctions. If the judge found I had some type of misconduct or engaged in some type of misconduct, the judge would know how to sanction me. Yeah. The judge's order mentions Rule 11 briefly, but this clearly is not a Rule 11 sanction. Yes, Your Honor. And I would agree with that. It's a fee shifting award under K-3. Thank you very much. Thank both sides for their argument. Hyde v. Midland Credit Management is now submitted for decision. The next case is Thomason v. G.C. Services, Ltd. Thank you. Thank you.
judges: Fletcher, Paez, Duffy